CV   09   2189

ORIGINAL

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X

JAMES MATTHEW MINTER,

      Plaintiff,  (S.J.)

   -against-

COUNTY OF NASSAU, VILLAGE OF GARDEN CITY,
THE CITY OF NEW YORK,
POLICE OFFICER KEVIN MADDEN, individually
and in his official capacity, "JOHN
DOE" POLICE OFFICERS, Shield Nos. Unknown,
individually and in their official capacities
as police officers of the COUNTY OF NASSAU,
VILLAGE OF GARDEN CITY, and/or CITY OF NEW YORK

      Defendants.
------------------------------------------------------------------X

**COMPLAINT**
Index No.:

**TRIAL BY JURY DEMANDED**

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E.D.N.Y

★   MAY 22 2009   ★

LONG ISLAND OFFICE

HURLEY, J.

WALL, M.J.

   Plaintiff, by his attorneys, THE LAW OFFICES OF FREDERICK K. BREWINGTON, as

and for his complaint against defendants, respectfully states and alleges, upon information and belief,

as follows:

### PRELIMINARY STATEMENT

   1.  This is an action for money damages against the COUNTY OF NASSAU, VILLAGE

OF GARDEN CITY,  THE CITY OF NEW YORK, POLICE OFFICER KEVIN MADDEN,

individually and in his official capacity, "JOHN DOE" POLICE OFFICERS, Shield Nos. Unknown,

individually and in their official capacities as police officers of the COUNTY OF NASSAU,

VILLAGE OF GARDEN CITY, and/or CITY OF NEW YORK for committing acts under color of

law and depriving plaintiff of rights secured by the Constitution and laws of the United States.

Plaintiff alleges that defendants MADDEN, and "JOHN DOE" POLICE OFFICERS assaulted,

battered, falsely accused, falsely arrested, falsely imprisoned, and maliciously prosecuted JAMES

MATTHEW MINTER all in violation of his constitutional and civil rights.  Plaintiff alleges that

defendants COUNTY OF NASSAU, VILLAGE OF GARDEN CITY and/or CITY OF NEW YORK

were negligent in training, hiring and supervising officer MADDEN  and "JOHN DOE" POLICE

OFFICERS, thus leading to the unjustified excessive force, assault, false arrest, false imprisonment

and malicious prosecution of JAMES MATTHEW MINTER.  Plaintiff alleges that the arrest was made in an attempt to justify the flagrantly improper and unjustified conduct of defendant Police Officers. Defendant Police officers without probable cause, justification or any reason except racism and an intent to deprive plaintiff of his rights, and their knowledge that their conduct has the tacit authorization of COUNTY OF NASSAU, VILLAGE OF GARDEN CITY and CITY OF NEW YORK excessively beat, falsely charged, and falsely imprisoned plaintiff and continued to attempt to bribe Plaintiff in an effort to cover up the wrongdoing.  Said use of unjustified force on plaintiff deprived him of his civil and constitutional rights.  After said unlawful beating and abuse, the plaintiff was denied medical attention and harassed by the Police Officers involved in the incident. Defendants had no legal basis for such deprivation of his rights and therefore,  Plaintiff alleges that COUNTY OF NASSAU, VILLAGE OF GARDEN CITY and CITY OF NEW YORK are liable for the assault, battery, excessive force, false arrest, and false imprisonment because the COUNTY OF NASSAU, VILLAGE OF GARDEN CITY and CITY OF NEW YORK has abused, condoned and permitted a pattern of abuse of process of minority persons and has failed to properly investigate such incidents and discipline the officers involved with the result that police officers of the COUNTY OF NASSAU, VILLAGE OF GARDEN CITY and CITY OF NEW YORK  are encouraged to believe that they could violate the rights of persons such as the plaintiff with impunity and that the New York City Police Department, Garden City Police Department and Nassau County Police Department has and continues to act in violation of individual rights, constituting through their actions a policy.

## JURISDICTION AND VENUE

2.     This action is brought pursuant to 42 U.S.C. Sections 1981, 1983, 1985 , 1986 and 1988 and the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution Jurisdiction is founded upon 28 U.S.C. Sections 1331 and 1341 (3) & (4) and the aforementioned statutory and constitutional provisions.  Plaintiff further invokes the pendent jurisdiction of this Court to hear and decide claims arising under state law.

## PARTIES

3.     Plaintiff JAMES MATTHEW MINTER is and was at all times relevant herein a citizen of the United States.

4.     That defendant the COUNTY OF NASSAU (hereinafter referred to as "COUNTY") was and is a duly constituted municipal corporation of the State of New York existing and operating under and by the virtue of the laws of the State of New York.

5.     That defendant VILLAGE OF GARDEN CITY  (hereinafter referred to as the "VILLAGE") was and is a duly constituted municipal corporation of the State of New York existing and operating under and by the virtue of the laws of the State of New York.

6.     That defendant THE CITY OF NEW YORK  (hereinafter "CITY) was and is a Municipal Corporation, having a place of business in New York County, New York, duly organized and existing under and by virtue of the laws of the State of New York.

7.     That DEFENDANT OFFICER KEVIN MADDEN, and the "JOHN DOE" POLICE OFFICERS (Hereinafter referred to as "DEFENDANT  OFFICERS") were at all times herein mentioned police officers, employed by the COUNTY, VILLAGE, and/or the CITY  under the direction of Defendants, the DEFENDANT OFFICERS were acting in furtherance of the scope of their employment, acting under color of law, to wit under color of statutes, ordinances, regulations, policies, customs and usages of the State of New York and/or the CITY OF NEW YORK.

8.     Upon information and belief, that all times hereinafter mentioned and at the time of the commencement of this action, the DEFENDANT OFFICERS were and are citizens and residents of the State of New York.

9.     That prior hereto Plaintiff in conjunction with his State claims filed a Notice of Claim in compliance with General Municipal Law Section 50 et. seq.

10.    That more than 30 days have elapsed and Defendants have failed and refused to pay or adjust same.

11.    That defendant COUNTY was and is the employer of members of the Nassau County

3

Police Department.

    12.     That defendant VILLAGE was and is the employer of members of the Garden City Police Department.

    13.     That defendant CITY was and is the employer of members of the New York City Police Department. That

    14.     That DEFENDANT OFFICERS were employees of Defendants, COUNTY, VILLAGE and/or CITY on May 23, 2008.

    15.     That on May 23, 2008, DEFENDANT OFFICERS were  New York City police officers employed by defendant CITY and acted as an agent of defendant CITY.

    16.     That on May 23, 2008, DEFENDANT OFFICERS were Nassau County police officers employed by defendant COUNTY and acted as an agent of defendant COUNTY.

    17.     That on May 23, 2008, DEFENDANT OFFICERS were Garden City police officers employed by defendant VILLAGE and acted as an agent of defendant VILLAGE.

## FACTUAL BACKGROUND

    18.     That plaintiff, JAMES MATTHEW MINTER, repeats, reiterates and reallege each and every allegation contained in paragraphs "1" through "17" of this complaint, with the same force and effect as though fully set forth herein.

    19.     On or about May 23, 2008,  plaintiff JAMES MATTHEW MINTER was legally on the premises of a Boatyard located at Norton Avenue and Beach 48th Street, Far Rockaway, NY.

    20.     That the DEFENDANT OFFICERS, without probable cause or any reason to believe that plaintiff was engaged in any criminal activity, set upon plaintiff, who was at his place of employment in Queens County and DEFENDANT OFFICERS with guns and revolvers in hand and commenced to severely brutalize, falsely arrest, and falsely detain the plaintiff.

    21.     On said date, although the plaintiff had committed no crime or broken any law, for

4

which he was charged, exhibited no assaultive behavior, nor made any threatening gestures towards DEFENDANT OFFICERS, said officers engaged in the aforementioned prohibited conduct all in violation of the plaintiff's constitutionally protected rights.

22.    DEFENDANT OFFICERS conspired and concocted the trumped up allegations of wrongdoing on the part of Plaintiff, wherein they accused Plaintiff of being the light skinned gentleman that was involved in a car chase.

23.    DEFENDANT OFFICERS detained and arrested the plaintiff although no probable cause existed for said arrest.

24.    DEFENDANT OFFICERS, with no provocation, was handcuffed and brutally beaten Plaintiff with their hands and fists as well with a gun and other unknown objects causing severe physical and emotional injuries to Plaintiff's person.

25.    DEFENDANT OFFICERS also subjected Plaintiff to an unlawful search of his person by, without Plaintiff's consent. DEFENDANT OFFICERS placed their hands down the pants of Plaintiff as well as forcing Plaintiff to pull down his pants and spread his buttocks in order for DEFENDANT OFFICERS to conduct this unlawful strip search.

26.    While Plaintiff, still in police custody, was handcuffed and brutally beaten by the DEFENDANT POLICE OFFICERS, several Officers from the New York City Police Department, Nassau County Police Department and Village of Garden City Police Department were aware of Plaintiff being beaten and stood outside of the Boatyard, and failed to intervene.

27.    After viciously beating Plaintiff with their hands, fists, legs and objects, DEFENDANT POLICE OFFICERS transported Plaintiff from the interior of the Boatyard to the entrance of the Boat Yard in a forceful fashion.

28.    While the two DEFENDANT POLICE OFFICERS, who assaulted and beat Plaintiff took flight towards another location, Plaintiff was left in the custody of numerous other DEFENDANT POLICE OFFICERS who appeared to be from the Nassau County Police Department and New York City Police Department.

5

29.     Plaintiff, while in police custody, handcuffed and being detained at the entrance of the Boat Yard, was denied medical attention for the injuries suffered at the hands of the two DEFENDANT OFFICERS. The DEFENDANT POLICE OFFICERS who initially denied Plaintiff medical attention appeared to be from the Nassau County Police Department and New York City Police Department.

30.     As a result of the DEFENDANT POLICE OFFICERS' refusal to provide medical attention, Plaintiff was forced to suffer and endure the excruciating pain associated with his injuries, while still being detained, handcuffed and in the custody of the DEFENDANT POLICE OFFICERS.

31.     After over one (1) hour of being handcuffed and wrongfully detained by DEFENDANT OFFICERS, Plaintiff was unarrested and finally released by DEFENDANT OFFICER KEVIN MADDEN from wrongful custody without the Plaintiff having to go to a Precinct for booking or appear in Court before a Judge. DEFENDANT OFFICERS told plaintiff that this was a case of mistaken identity and that there would be no charges brought against him. An accusatory instrument was never signed, sworn to and filed in the criminal court. Upon information and belief, this process was not followed because DEFENDANT OFFICERS were well aware of their improper an illegal actions towards Plaintiff.

32.     At the time of his unarrest and release by DEFENDANT OFFICER KEVIN MADDEN, Plaintiff was bleeding profusely from his head, wrists and knees. Upon his release, Plaintiff was again denied medical attention by DEFENDANT OFFICER KEVIN MADDEN and "JOHN DOE" POLICE OFFICERS, forcing Plaintiff to walk to Peninsula Hospital for medical assistance  as Plaintiff was suffering from severe pain and loss of blood as a result of his injuries.

33.     After arriving at Peninsula, via foot, two DEFENDANT OFFICERS arrived at Peninsula Hospital in an attempt to talk to Plaintiff about the DEFENDANT OFFICERS' conduct towards Plaintiff and to further interrogate Plaintiff.

6

34.     While at the Hospital, the two DEFENDANT OFFICERS, appearing to be from the New York City Police Department, refused to take a report from Plaintiff regarding the incident and advised Plaintiff that he would have to speak to Garden City Police Officers. .

35.     Shortly afterwards, DEFENDANT OFFICER KEVIN MADDEN, apparently from Garden City Police Department,  also appeared along with the DEFENDANT OFFICERS and attempted to justify their behavior towards Plaintiff by advising Plaintiff that this was simply a case of mistaken identity.

36.     DEFENDANT OFFICER KEVIN MADDEN went on to offer Plaintiff a monetary payment to Plaintiff in an attempt to convince Plaintiff not to pursue this matter. DEFENDANT OFFICER KEVIN MADDEN suggested to Plaintiff that he take this monetary payment to help him understand that this was a "misunderstanding".

37.     DEFENDANT OFFICER KEVIN MADDEN also offered Plaintiff the opportunity to have any of Plaintiff's tickets and/or criminal charges resolved to convince Plaintiff not to pursue this matter. DEFENDANT OFFICER KEVIN MADDEN again suggested to Plaintiff that he take this offer to help him understand that this was a "misunderstanding".

38.     On the day following the incident, Plaintiff was again approached by DEFENDANT OFFICER KEVIN MADDEN in an attempt to dissuade Plaintiff from filing an official complaint against the DEFENDANT OFFICERS involved. This encounter took place at the Garden City Police Department where Plaintiff was attempting to fill out a Complaint.

### AS AND FOR A FIRST COUNT
### 42 U.S.C. § 1983

39.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 38 of this complaint with the same force and effect as though fully set forth herein.

40.     On or about May 23, 2008, plaintiff was placed in fear of his life,  falsely seized, falsely detained and falsely arrested by defendants and subject to excessive and unreasonable force

7

ans unlawful search and seizure.

41.     On or about May 23, 2008, plaintiff was placed in fear of his life, falsely arrested, falsely seized, detained, and held for an unreasonable period of time against his will without justification, explanation or rationale for such detention.

42.     On or about May 23, 2008, while being detained, Plaintiff was subject to excessive and unreasonable force and to an unlawful search, which was demeaning in nature.

43.     Upon information and belief such search and seizure, arrest and detention was ordered and was a callous, deliberate indifference to Plaintiff's medical needs directed by defendants COUNTY, VILLAGE, CITY, and DEFENDANT OFFICERS.

44.     DEFENDANT OFFICERS, appearing to be from the New York City Police Department and the Nassau County Police Department, were present at the Boatyard and were aware of the unlawful detention, arrest and beating of Plaintiff while in the Boatyard by two DEFENDANT OFFICERS, appearing to be from the Garden City Police Department.

45.     DEFENDANT OFFICERS, appearing to be from the New York City Police Department and the Nassau County Police Department, failed to take any action to prevent this unlawful behavior by the two DEFENDANT OFFICERS, appearing to be from the Garden City Police Department.

46.     DEFENDANT OFFICERS, appearing to be from the New York City Police Department and the Nassau County Police Department, refused Plaintiff medical attention while still in their custody. Furthermore, DEFENDANT OFFICER KEVIN MADDEN, who appears to be from Garden City Police Department, continued in this unlawful treatment by failing to provide for Plaintiff to receive medical assistance at the time of his release, for the injuries sustained at the hands of DEFENDANT OFFICERS.

47.     Upon information and belief, such search, seizure, arrest, detention and assault was ordered, condoned and authorized by COUNTY, VILLAGE, CITY, and DEFENDANT OFFICERS, with a callous, deliberate indifference to Plaintiff's known medical needs.

8

48.     Upon information and belief, the defendants and each of them took an active role in creating and manufacturing the allegations made against plaintiff due to his age, race and color.

49.     As part of the false arrest, detention and accusations, defendants caused plaintiff to be seized, arrested and held in a dangerous, compromising position for an unreasonable time without probable cause and caused him to be deprived of his liberty, without due process and was further exposed to disgrace, public humiliation and embarrassment.

50.     The defendants individually and collectively knew at the time of plaintiff's arrest and at all times since then that the evidence they had in connection with any of the allegations made against plaintiff were inconsistent with and insufficient to establish his guilt and were based solely, or in part, on Defendants discriminatory and violative actions due to his age, race and color.

51.     Each of the defendants acting under color of law, acted separately and in concert acted outside the scope of their jurisdiction and without authorization of law and each of the defendants, separately and in concert acted willfully, knowingly and purposefully with the specific intent to deprive plaintiff of his right to freedom from illegal seizure of his person, freedom from illegal detention and imprisonment.  All of these rights are secured to plaintiff by the provisions of the due process clause of the Fifth and Fourteenth Amendments to the Constitution of the United States, the Fourth Amendment, as well as the Equal Protection clause of the Fourteenth Amendment and by 42 U.S.C. § 1983.

52.     In falsely arresting, falsely imprisoning, abusing, detaining, coercing, threatening, intimidating and interrogating plaintiff, and denying plaintiff his right to free speech the defendants, and each of them knew or should have known they were violating laws of the State of New York and those statutory and Constitutional rights set forth herein and have failed to prevent the same and therefore acted in concert to harm plaintiff.

53.     As a direct and proximate result of the aforesaid acts of the defendants and each of them, plaintiff suffered great physical harm, mental anguish and violation of rights from then until now and he will continue to so suffer in the future having been greatly humiliated and mentally

injured, as a result of the foregoing acts of the defendants.

54.     Plaintiff was forced to incur great expense to the date of the filing of this complaint for attorney's fees, investigation expenses, and other expenses in clearing his name against the unfounded and unwarranted allegations by the defendants which have been a serious burden to plaintiff.

55.     That by reason of the foregoing, plaintiff has been placed in fear of his life, emotional damages, distress, pain, suffering, loss of self esteem, self doubt and exposed him to disgrace, public humiliation and embarrassment was prevented from attending his work and business for a long time, was deprived of access to his family and was deprived of his constitutional rights and has been damaged in the sum of Three Million ($3,000,000.00) Dollars.

## AND AS FOR A SECOND COUNT
## 42 U.S.C.§ 1983 MUNICIPAL VIOLATIONS

56.     The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 55 of this complaint with the same force and effect as though fully set forth herein.

### Nassau County Police Department

57.     Prior to May 23, 2008 and since, there exists in the COUNTY, specifically the Nassau County Police Department, a policy that casts a blanket assumption that Hispanics and Blacks are guilty, until proven innocent. There exists a policy or custom in COUNTY wherein the COUNTY fails to train and supervise street officers and detectives in their enforcement of the laws; to wit, the Department has a policy of overlooking, excusing, and disregarding illegal behavior by street officers and detectives as same is targeted against members of the African American Community. COUNTY disproportionately targets African Americans and the facts presented by Officers are presumed true and the end result is nearly always a denial of wrongdoing.

58.     Prior to May 23, 2008 and since, there exists in the COUNTY, specifically the Nassau County Police Department, a policy wherein the County fails to properly train, supervise, investigate

and discipline the police officers involved in the unlawful, unjustified and excessive beatings of Hispanic and Black persons by police officers of the COUNTY.

59.     Prior to May 23, 2008 and since, there exists in the COUNTY, specifically the Nassau County Police Department, a policy of using excessive, and sometimes deadly, force regardless of the situation faced or the alternatives available to them.

60.     Prior to May 23, 2008 and since, there exists in the COUNTY, specifically the Nassau County Police Department, a policy have permitted and tolerated a pattern and practice of unjustified, unreasonable and illegal beatings of Hispanic and Black persons by police officers of the COUNTY. Although such beatings were improper, the officers involved were not seriously prosecuted, disciplined or subjected to restraining and such incidents were in fact covered up with official claims that the beatings were justified and proper. As a result, the COUNTY police officers were caused and encouraged to believe that Hispanic and Black persons could be beaten under circumstances not requiring the use of excessive force, and that such beatings would in fact be permitted by the COUNTY.

61.     The recent victims of the aforesaid wrongful beatings and excessive use of force by the Nassau County Police Department, in addition to the Plaintiff, JAMES MATTHEW MINTER, are Richard Andrew Nedd, Tyrone Clarke and Christopher Wade, Jasmine Jackson.

62.     Upon information and belief, the COUNTY exonerated the police officers involved in the fatal beating of Richard Andrew Nedd.

63.     Upon information and belief, the COUNTY exonerated the police officers involved in the beating of Tyrone Clarke.

64.     Upon information and belief, the COUNTY exonerated the police officers involved in the beating of Christopher Wade.

65.     Upon information and belief, the COUNTY exonerated the police officers involved in the beating of Jasmine Jackson.

66.     In addition to permitting a pattern of practice of improper treatment of minority persons, the COUNTY has failed to maintain a proper system for investigation of all incidents of unjustified arrests, beatings and excessive use of force by police officers.

67.   The recent victims of the aforesaid wrongful beatings and excessive use of force by the Nassau County Police Department, in addition to the Plaintiff, JAMES MATTHEW MINTER, is Raheem Crews.

68.   The COUNTY failed to properly investigate the claims of false arrest and malicious prosecution alleged by Raheem Crews and such incidents were in fact covered up with official claims that the arrest and prosecution was justified. As a result, County Police Officers were caused to believe that Hispanic and Black persons could be falsely arrested and maliciously prosecuted and that such false arrests and malicious prosecutions would in fact be permitted by the COUNTY.

69.   The COUNTY  has failed to respond to the continuing and urgent need to prevent, restrain and discipline police officers who deprive civil rights of, and abuse, minorities.

70.   Any system allegedly maintained by the COUNTY failed to properly review unjustified behavior and excessive use of force by police officers and has failed to identify the improper abuse, misuse, violative acts and brutality by police officers and to subject officers who beat/brutalize to discipline, closer supervision or restraint to the extent that it has become the custom of the COUNTY to tolerate the improper beatings, illegal arrests and other wrongful actions by police officers.

71.   Upon information and belief, specific systemic flaws in the COUNTY's police misconduct review process include but are not limited to the following:

> a. Preparing reports regarding investigations of unwarranted incidents as routine point-by-point justification of the police officers' actions regardless of whether such actions are justified;
>
> b.  Police officers investigating unwarranted incidents systematically fail to credit testimony by non-police officer witnesses and uncritically rely on reports by police officers involved in the incident;
>
> c.  Police officers investigating unwarranted incidents fail to include in their reports relevant factual information which would tend to contradict the statements of the police officer involved;
>
> d.  Supervisory police officers at times issue public statements exonerating police officers for misconduct, excessive use of force and improper beatings before the investigation of the incident by the police department has been completed;
>
> e.  Reports in brutality cases are not reviewed for accuracy by supervisory officers. Conclusions are frequently permitted to be drawn on the basis of clearly incorrect or contradictory information.

72.     The foregoing acts, omissions, systemic flaws, policies and customs of the COUNTY caused police officers of the COUNTY to believe that brutality and other improper actions would not be aggressively, honestly and properly investigated with the foreseeable result that officers are most likely to act inappropriately and/or use excessive force in situations where such force is neither necessary nor reasonable.

73.     As a direct and proximate result of the aforesaid acts, omissions, systemic flaws, policies and customs of the defendant COUNTY, and the other defendants unjustifiably mistreated, illegally arrested and wrongfully detained the plaintiff. All in violation of the plaintiff's civil and constitutional rights and he has suffered and will continue to suffer from psychological harm, humiliation, fear, defamation of character and injury to reputation. All of these rights are secured to plaintiff by the provisions of the Fourth Amendment and Sixth Amendments, the due process clause of the Fifth and Fourteenth Amendments to the Constitution of the United States and by 42 U.S.C. §§ 1981, 1983 1985 and 1986 and the laws of the State of New York.

**Village of Garden City Police Department**

74.     Prior to May 23, 2008 and since, there exists in the VILLAGE, specifically the Village of Garden City Police Department, a policy that casts a blanket assumption that Hispanics and Blacks are guilty, until proven innocent. There exists a policy or custom in VILLAGE wherein the VILLAGE fails to train and supervise street officers and detectives in their enforcement of the laws; to wit, the Department has a policy of overlooking, excusing, and disregarding illegal behavior by street officers and detectives as same is targeted against members of the African American Community. VILLAGE disproportionately targets African Americans and the facts presented by Officers are presumed true and the end result is nearly always a denial of wrongdoing.

75.     Prior to May 23, 2008 and since, there exists in the VILLAGE, specifically the Village of Garden City Police Department, a policy wherein the County fails to properly train, supervise, investigate and discipline the police officers involved in the unlawful, unjustified and excessive beatings of Hispanic and Black persons by police officers of the VILLAGE..

76.     Prior to May 23, 2008 and since, there exists in the VILLAGE, specifically the Village of Garden City Police Department, a policy of using excessive, and sometimes deadly, force

13

regardless of the situation faced or the alternatives available to them.

77.     Prior to May 23, 2008 and since, there exists in the VILLAGE, specifically the Village of Garden City Police Department, a policy  have permitted and tolerated a pattern and practice of unjustified, unreasonable and illegal beatings of Hispanic and Black persons by police officers of the VILLAGE.  Although such beatings were improper, the officers involved were not seriously prosecuted, disciplined or subjected to restraining and such incidents were in fact covered up with official claims that the beatings were justified and proper.  As a result, the VILLAGE police officers were caused and encouraged to believe that Hispanic and Black persons could be beaten under circumstances not requiring the use of excessive force, and that such beatings would in fact be permitted by the VILLAGE.

78.     The recent victims of the aforesaid wrongful beatings and excessive use of force by the Village of Garden City Police Department, in addition to the Plaintiff, JAMES MATTHEW MINTER, are William Byrd and Juan Montoya

79.     Upon information and belief, the VILLAGE exonerated the police officers involved in the beating of William Byrd.

80.     Upon information and belief, the VILLAGE exonerated the police officers involved in the beating of Juan Montoya.

81.     In addition to permitting a pattern of practice of improper treatment of minority persons, the VILLAGE has failed to maintain a proper system for investigation of all incidents of unjustified arrests, beatings and excessive use of force by police officers.

82.     The VILLAGE has failed to respond to the continuing and urgent need to prevent, restrain and discipline police officers who deprive civil rights of, and abuse, minorities.

83.     Any system allegedly maintained by the VILLAGE failed to properly review unjustified behavior and excessive use of force by police officers and has failed to identify the improper abuse, misuse, violative acts and brutality by police officers and to subject officers who beat/brutalize to discipline, closer supervision or restraint to the extent that it has become the custom of the VILLAGE to tolerate the improper beatings, illegal arrests and other wrongful actions by police officers.

84.     Upon information and belief, specific systemic flaws in the VILLAGE's police misconduct review process include but are not limited to the following:

> a. Preparing reports regarding investigations of unwarranted incidents as routine point-by-point justification of the police officers' actions regardless of whether such actions are justified;
>
> b. Police officers investigating unwarranted incidents systematically fail to credit testimony by non-police officer witnesses and uncritically rely on reports by police officers involved in the incident;
>
> c. Police officers investigating unwarranted incidents fail to include in their reports relevant factual information which would tend to contradict the statements of the police officer involved;
>
> d. Supervisory police officers at times issue public statements exonerating police officers for misconduct, excessive use of force and improper beatings before the investigation of the incident by the police department has been completed;
>
> e. Reports in brutality cases are not reviewed for accuracy by supervisory officers. Conclusions are frequently permitted to be drawn on the basis of clearly incorrect or contradictory information.

85.     The foregoing acts, omissions, systemic flaws, policies and customs of the VILLAGE caused police officers of the VILLAGE to believe that brutality and other improper actions would not be aggressively, honestly and properly investigated with the foreseeable result that officers are most likely to act inappropriately and/or use excessive force in situations where such force is neither necessary nor reasonable.

86.     As a direct and proximate result of the aforesaid acts, omissions, systemic flaws, policies and customs of the defendant VILLAGE and the other defendants unjustifiably mistreated, illegally arrested and wrongfully detained the plaintiff. All in violation of the plaintiff's civil and constitutional rights and he has suffered and will continue to suffer from psychological harm, humiliation, fear, defamation of character and injury to reputation. All of these rights are secured to plaintiff by the provisions of the Fourth Amendment and Sixth Amendments, the due process clause of the Fifth and Fourteenth Amendments to the Constitution of the United States and by 42 U.S.C. §§ 1981, 1983 1985 and 1986 and the laws of the State of New York.

**New York City Police Department**

87.     Prior to May 23, 2008 and since, there exists in the CITY, specifically the New York City Police Department, a policy that casts a blanket assumption that Hispanics and Blacks are guilty,

15

until proven innocent. There exists a policy or custom in CITY wherein the CITY fails to train and supervise street officers and detectives in their enforcement of the laws; to wit, the Department has a policy of overlooking, excusing, and disregarding illegal behavior by street officers and detectives as same is targeted against members of the African American Community. CITY disproportionately targets African Americans and the facts presented by Officers are presumed true and the end result is nearly always a denial of wrongdoing.

88.     Prior to May 23, 2008 and since, there exists in the CITY, specifically the New York City Police Department, a policy wherein the CITY fails to properly train, supervise, investigate and discipline the police officers involved in the unlawful, unjustified and excessive beatings of Hispanic and Black persons by police officers of the CITY.

89.     Prior to May 23, 2008 and since, there exists in the CITY, specifically the New York City Police Department,  a policy of using excessive, and sometimes deadly, force regardless of the situation faced or the alternatives available to them.

90.     Prior to May 23, 2008 and since, there exists in the CITY, a policy have permitted and tolerated a pattern and practice of unjustified, unreasonable and illegal beatings of Hispanic and Black persons by police officers of the CITY. Although such beatings were improper, the officers involved were not seriously prosecuted, disciplined or subjected to restraining and such incidents were in fact covered up with official claims that the beatings were justified and proper. As a result, the CITY police officers were caused and encouraged to believe that Hispanic and Black persons could be beaten under circumstances not requiring the use of excessive force, and that such beatings would in fact be permitted by the CITY.

91.     The recent victims of the aforesaid wrongful beatings and excessive use of force by the Nassau County Police Department, in addition to the Plaintiff, JAMES MATTHEW MINTER, are Alvinia Tombs, Michael Cephus, Sean Bell, Michael Mineo, Darryl Forde.

92.     Upon information and belief, the CITY exonerated the police officers involved in the beating of Alvinia Tombs.

93.     Upon information and belief, the CITY exonerated the police officers involved in the beating of Michael Cephus.

16

94.    Upon information and belief, the CITY exonerated the police officers involved in the beating of Sean Bell.

95.    Upon information and belief, the CITY exonerated the police officers involved in the beating of Michael Mineo.

96.    Upon information and belief, the CITY exonerated the police officers involved in the beating of Darryl Forde.

97.    In addition to permitting a pattern of practice of improper treatment of minority persons, the CITY has failed to maintain a proper system for investigation of all incidents of unjustified arrests, beatings and excessive use of force by police officers.

98.    The CITY has failed to respond to the continuing and urgent need to prevent, restrain and discipline police officers who deprive civil rights of, and abuse, minorities.

99.    Any system allegedly maintained by the CITY failed to properly review unjustified behavior and excessive use of force by police officers and has failed to identify the improper abuse, misuse, violative acts and brutality by police officers and to subject officers who beat/brutalize to discipline, closer supervision or restraint to the extent that it has become the custom of the CITY to tolerate the improper beatings, illegal arrests and other wrongful actions by police officers.

100.    Upon information and belief, specific systemic flaws in the CITY's police misconduct review process include but are not limited to the following:

a.  Preparing reports regarding investigations of unwarranted incidents as routine point-by-point justification of the police officers' actions regardless of whether such actions are justified;

b.  Police officers investigating unwarranted incidents systematically fail to credit testimony by non-police officer witnesses and uncritically rely on reports by police officers involved in the incident;

c.  Police officers investigating unwarranted incidents fail to include in their reports relevant factual information which would tend to contradict the statements of the police officer involved;

d.  Supervisory police officers at times issue public statements exonerating police officers for misconduct, excessive use of force and improper beatings before the investigation of the incident by the police department has been completed;

e.  Reports in brutality cases are not reviewed for accuracy by supervisory officers. Conclusions are frequently permitted to be drawn on the basis of clearly incorrect or contradictory information.

101. The foregoing acts, omissions, systemic flaws, policies and customs of the CITY caused police officers of the CITY to believe that brutality and other improper actions would not be aggressively, honestly and properly investigated with the foreseeable result that officers are most likely to act inappropriately and/or use excessive force in situations where such force is neither necessary nor reasonable.

102. As a direct and proximate result of the aforesaid acts, omissions, systemic flaws, policies and customs of the defendant CITY, the other defendants unjustifiably mistreated, illegally arrested and wrongfully detained the plaintiff. All in violation of the plaintiff's civil and constitutional rights and he has suffered and will continue to suffer from psychological harm, humiliation, fear, defamation of character and injury to reputation. All of these rights are secured to plaintiff by the provisions of the Fourth Amendment and Sixth Amendments, the due process clause of the Fifth and Fourteenth Amendments to the Constitution of the United States and by 42 U.S.C. §§ 1981, 1983 1985 and 1986 and the laws of the State of New York.

103. That by reason of the foregoing, Plaintiff has been placed in fear of his life, emotional damages, distress, pain, suffering, loss of self esteem, self doubt and exposed him to disgrace, public humiliation and embarrassment was prevented from attending his work and business for a long time, was deprived of access to his family and was deprived of his constitutional rights by DEFENDANTS COUNTY, VILLAGE, CITY and DEFENDANT OFFICERS and has been damaged in the sum of Three Million ($3,000,000.00) Dollars.

### AND AS FOR A THIRD COUNT
### 42 U.S.C. § 1983 ALTERNATE LIABILITY OF DEFENDANTS
### COUNTY OF NASSAU, VILLAGE OF GARDEN CITY AND CITY OF NEW YORK

104. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 103 of this complaint with the same force and effect as though fully set forth herein.

105. Defendants COUNTY, VILLAGE and CITY are directly liable for the constitutional violations that plaintiff MINTER suffered in that Defendants COUNTY, VILLAGE and CITY hired

and retained officers who, acting within the course and scope of power and authority conveyed to the officers by Defendants COUNTY, VILLAGE and CITY , violated the constitutional rights of Plaintiff.

106.    Plaintiff acknowledges that *respondeat superior* is not now a basis for COUNTY and POLICE DEPARTMENT liability under existing law.  Plaintiff submits that there exists a good faith argument for the modification of that rule based on the dissenting opinion of Justice Breyer in Board of County Commissioners of Bryan County, Oklahoma v. Jill Brown et al., [520 U.S. 397, 117 S.Ct. 1382 (1997)], and based upon the literature addressing this issue.

107.    As a direct and proximate result of the aforesaid acts, omissions, systemic flaws, policies and customs of the defendants COUNTY, VILLAGE and CITY and the other defendants unjustifiably mistreated, illegally arrested and wrongfully detained the plaintiff.  All in violation of the plaintiff's civil and constitutional rights and he has suffered and will continue to suffer from psychological harm, humiliation, fear, defamation of character and injury to reputation.  All of these rights are secured to plaintiff by the provisions of the Fourth Amendment, Sixth Amendment, the due process clause of the Fifth and Fourteenth Amendments to the Constitution of the United States and by 42 U.S.C. §§ 1981, 1983, 1985 and 1986 and the laws of the State of New York.

108.    That by reason of the foregoing, Plaintiff has been placed in fear of his life, emotional damages, distress, pain, suffering, loss of self esteem, self doubt and exposed him to disgrace, public humiliation and embarrassment was prevented from attending his work and business for a long time, was deprived of access to his family and was deprived of his constitutional rights by DEFENDANTS COUNTY, VILLAGE, CITY and DEFENDANT OFFICERS and has been damaged in the sum of Three Million ($3,000,000.00) Dollars.

## AND AS FOR A FOURTH COUNT
### 42 U.S.C. § 1981

109.    The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 108 of this complaint with the same force and effect as though fully set forth herein.

110.    Plaintiff was targeted by DEFENDANT POLICE OFFICERS solely because of his race, that being of African-American descent.

111.    Plaintiff was detained, arrested, assaulted and beaten by DEFENDANT POLICE OFFICERS solely on the account of his race.

112.    The above referenced conduct was part of a pattern and practice of discrimination, based on race and color, by Defendants, all of which violates 42 U.S.C. §1981 as amended by the Civil Rights Restoration Act of 1991 (Publ. Law No, 102-406).

113.    The above referenced conduct was part of a pattern and practice of discrimination, based on race and color, by Defendants, all of which violates 42 U.S.C. §1981 as amended by the Civil Rights Restoration Act of 1991 (Publ. Law No, 102-406).

114.    Defendants continued the aforesaid discriminatory and retaliatory treatment of Plaintiff on a continuous, ongoing basis, and defendants' above alleged conduct was part of a systemic pattern and practice of discrimination (against Plaintiff as a Young African-American male).

115.    As a consequence of defendants' wrongful actions, willful neglect, callous indifference, negligent behavior and violation of state and federal laws, Plaintiff was deprived of his freedom, was injured, was subjected to unlawful search and seizure, was subjected to mental anguish, suffered great fear, embarrassment, personal, humiliation, degradation and loss of business opportunity. All of these rights are secured to plaintiff by the provisions of the due process clause of the Fifth and Fourteenth Amendment; the equal protection clause and the Fourth Amendments to the United States Constitution as well as the protections afforded under 42 U.S.C. § 1981.

116.    That by reason of the foregoing, plaintiff has been placed in fear of his life, emotional damages, distress, pain, suffering, loss of self esteem, self doubt and exposed him to disgrace, public humiliation and embarrassment was prevented from attending his work and business for a long time, was deprived of access to his family and was deprived of his constitutional rights and has been damaged in the sum of Three Million ($3,000,000.00) Dollars.

## AND AS FOR A FIFTH COUNT
### 42 U.S.C. § 1985

117.    The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 116 of this complaint with the same force and effect as though fully set forth herein.

118.    DEFENDANT OFFICERS' accusations and allegations against plaintiff were false, malicious, negligent, reckless, intentional and wrongful and were intended to cause plaintiff injury and to harass plaintiff.

119.    DEFENDANT OFFICER KEVIN MADDEN, and the "JOHN DOE" POLICE Officers from the Garden City Police Department, Nassau County Police Department and the New York City Police Department expressly and impliedly, agreed with each other to bring about plaintiff's seizure, arrest, detention and false accusation, all without lawful or proper basis or justification on account of his race and color. All without consideration of plaintiff's rights and in violation of all of plaintiff's rights.

120.    DEFENDANT OFFICER KEVIN MADDEN, and the "JOHN DOE" POLICE Officers from the Garden City Police Department, Nassau County Police Department and the New York City Police Department expressly and impliedly, agreed with each other to bring about plaintiff's brutal assault and beating, and expressly and impliedly agreed with each other to deny Plaintiff medical assistance,  all without lawful or proper basis or justification on account of his race and color. All without consideration of plaintiff's rights and in violation of all of plaintiff's rights.

121.    That the false arrest, false imprisonment, excessive force and violation of the laws of the State of New York and plaintiff's civil rights were brought about and caused by the actions of defendants and that the same were a clear and intentional abuse of process causing plaintiff damages. All of these rights are secured to plaintiff by the provisions of the Constitution of the United States and by 42 U.S.C. § 1985.

122.    That by reason of the foregoing, plaintiff has been placed in fear of his life, emotional damages, distress, pain, suffering, loss of self esteem, self doubt and exposed him to disgrace, public humiliation and embarrassment was prevented from attending his work and business for a long time,

was deprived of access to his family and was deprived of his constitutional rights and has been damaged in the sum of Three Million ($3,000,000.00) Dollars.

## AND AS FOR A SIXTH COUNT
### 42 U.S.C. § 1986

123.    The Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 122 of this complaint with the same force and effect as though fully set forth herein.

124.    DEFENDANT OFFICER KEVIN MADDEN, and the "JOHN DOE" POLICE Officers from the Garden City Police Department, Nassau County Police Department and the New York City Police Department knew or should have known that the detainment, false arrest, wrongful imprisonment and excessive beating of JAMES MATTHEW MINTER violated the Plaintiff's rights, guaranteed to him under the Fourth, Fifth, and Fourteenth Amendments and 42 U.S.C. § 1983, 1985 and 1986.

125.    Each of the said Defendants had the authority, ability and concurrent duty under 42 U.S.C. § 1986 to prevent the false arrest, wrongful detainment and excessive beating of the Plaintiff, yet neglected to prevent said violations from occurring, and further failed to intervene to protect or aid the Plaintiff when such violations did in fact occur.

126.    DEFENDANT OFFICER KEVIN MADDEN, and the "JOHN DOE" POLICE Officers from the Garden City Police Department, Nassau County Police Department and the New York City Police Department's failure to stop these wrongful actions constitutes a breach of their duty to do so under 42 U.S.C. § 1986.

127.    DEFENDANT OFFICER KEVIN MADDEN, and the "JOHN DOE" POLICE Officers from the Garden City Police Department, Nassau County Police Department and the New York City Police Department knew or should have known that the fabricated accusations against, and physical beating of JAMES MATTHEW MINTER were violative of his Fourth, Fifth and Fourteenth Amendment rights to due process, and were tantamount to unequal protection under the law, in violation of the Plaintiff's fundamental rights under the Constitution.

128.    Said Defendants had and continue to have the power to prevent the continued due

process violations against JAMES MATTHEW MINTER yet have failed to prevent or dismiss the pending fabricated charges against the Plaintiff, or to protect the Plaintiff from the unwarranted and potential penalties of said charges.

129.    Defendants COUNTY, VILLAGE, and CITY's exoneration of and refusal to discipline the DEFENDANT OFFICERS for their misconduct against JAMES MATTHEW MINTER is neglectful of their duty to prevent the further violation of JAMES MATTHEW MINTER's right to compensation under 42 U.S.C. §§'s 1981, 1983, 1985 and 1986, with such violation occurring as a result of said officers being improperly cleared of any wrongdoing, despite substantial eye-witness and physical evidence to the contrary.

130.    That by reason of the foregoing, plaintiff has been placed in fear of his life, emotional damages, distress, pain, suffering, loss of self esteem, self doubt and exposed him to disgrace, public humiliation and embarrassment was prevented from attending his work and business for a long time, was deprived of access to his family and was deprived of his constitutional rights and has been damaged in the sum of Three Million ($3,000,000.00) Dollars.

## AND AS FOR A SEVENTH COUNT
## ASSAULT (PENDENT STATE CLAIM)

131.    That plaintiff, JAMES MATTHEW MINTER, repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 130 of this complaint, with the same force and effect as though fully set forth herein.

132.    During all times mentioned herein, the defendants and each of them separately and in concert, engaged in the illegal conduct herein mentioned to the injury of plaintiff, JAMES MATTHEW MINTER, and deprived plaintiff, JAMES MATTHEW MINTER, of the rights, privileges and immunities secured to plaintiff by the Fourteenth Amendment of the Constitution of the United States, the laws of the United States and the laws of the State of New York, as pendant claims.

133.    That on said date DEFENDANT OFFICERS accosted plaintiff and brutally assaulted him without any justification, provocation or assaultive gestures on plaintiff's part and despite the fact that the plaintiff JAMES MATTHEW MINTER had committed no crime or broken any law, that

23

he was charged with, DEFENDANT OFFICERS interrogated, detained and arrested plaintiff with no probable cause.

134.    Although DEFENDANT OFFICERS acted contrary to the law, they continued their shocking and unjustified conduct by conspiring and contriving with each other on said criminal charges against plaintiff and they placed plaintiff in custody.

135.    Upon information and belief, said physical abuse and punishment were ordered by, carried out by, and condoned by COUNTY, VILLAGE, CITY, its agents and employees, who were acting within the course or scope of their employment.

136.    That as a result of said beatings, kickings, punches and stomping, the plaintiff, JAMES MATTHEW MINTER, sustained damages and injuries including but not limited to personal injuries to his body, violation of Civil rights, loss of income, permanent damage to reputation and standing in the community, loss of comfort, support and companionship, extreme mental and emotional harm and stress, impairment of earning power and other injuries not yet fully ascertained.

137.    That by reason of the foregoing, plaintiff has been placed in fear of his life, emotional damages, distress, pain, suffering, loss of self esteem, self doubt and exposed him to disgrace, public humiliation and embarrassment was prevented from attending his work and business for a long time, was deprived of access to his family and was deprived of his constitutional rights and has been damaged in the sum of Three Million ($3,000,000.00) Dollars.

## AND AS FOR A EIGHTH COUNT
## FALSE IMPRISONMENT (PENDENT STATE CLAIM)

138.    Plaintiff, JAMES MATTHEW MINTER, repeats, reiterates and realleges each and every allegation contained in paragraph 1 through 137 of this complaint, with the same force and effect as though fully set forth herein.

139.    On or about the 23rd day of May, 2008, in the CITY OF NEW YORK, DEFENDANT OFFICERS maliciously and deliberately, with force and arms, detained and arrested plaintiff, without any probable or reasonable cause and without any warrant or other legal process therefor, and thereupon maliciously with wanton and reckless disregard for his life,  beat him and thereafter detained him for an unreasonable length of time against plaintiff's will and without his consent.

140.    Plaintiff was detained for an unreasonable period of time as a result of said false arrest.

141.    That defendants engaged in the above mentioned actions without probable cause in that they did not honestly, reasonably and in good faith believe plaintiff to be guilty of any crimes.

142.    Defendants acted maliciously in arresting, interrogating, detaining, battering, assaulting, and transporting plaintiff, all against his will in that the defendants desired to harm plaintiff.

143.    As a result of the foregoing, plaintiff has suffered injury to his good name and reputation and has suffered great mental and bodily distress during his false imprisonment and afterwards, all to his damage.

144.    That by reason of the foregoing, plaintiff has been placed in fear of his life, emotional damages, distress, pain, suffering, loss of self esteem, self doubt and exposed him to disgrace, public humiliation and embarrassment was prevented from attending his work and business for a long time, was deprived of access to his family and was deprived of his constitutional rights and has been damaged in the sum of Three Million ($3,000,000.00) Dollars.

## AND AS FOR A NINTH COUNT
## FALSE ARREST (PENDENT STATE CLAIM)

145.    PLAINTIFF, JAMES MATTHEW MINTER, repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 144 of this complaint, with the same force and effect as though fully set forth herein.

146.    On or about the 23rd day of May, 2008, in the CITY OF NEW YORK, DEFENDANT OFFICERS, defendants intentionally, falsely, unlawfully and wrongfully, with force and without plaintiff's consent and against his will, assaulted, battered, falsely arrested and falsely imprisoned plaintiff by detaining plaintiff and imprisoning him and deprived him of his liberty for an unreasonable time.

147.    By reason of the above and in particular said false arrest, plaintiff's reputation has been greatly injured and he has been brought into public scandal and disgrace, and has been greatly hindered and prevented from following and transacting his affairs and business, and has suffered great emotional trauma and harm, all to his damage.

148.    That by reason of the foregoing, plaintiff has been placed in fear of his life, emotional

damages, distress, pain, suffering, loss of self esteem, self doubt and exposed him to disgrace, public

humiliation and embarrassment was prevented from attending his work and business for a long time,

was deprived of access to his family and was deprived of his constitutional rights and has been

damaged in the sum of Three Million ($3,000,000.00) Dollars.

## AND AS FOR A TENTH COUNT
## ABUSE OF PROCESS (PENDENT STATE CLAIM)

149.    Plaintiff, JAMES MATTHEW MINTER, repeats reiterates and realleges each and

every allegation contained in paragraphs 1 through 148 of this Complaint, with the same force and

effect as though fully set forth herein.

150.    Defendants' accusations and allegations against plaintiff were false, malicious,

negligent, reckless, intentional and wrongful and were intended to cause plaintiff injury and to harass

plaintiff and were clearly the improper exercise of the police power, the resources of government as

well as an abuse of process.

151.    That the false arrest, false imprisonment, assault, battery, excessive and unreasonable

use of force, illegal transportation, and violation of plaintiff's civil rights were brought about and

caused by the actions of defendants and that the same were a clear and intentional abuse of process

causing plaintiff severe damage.

152.    That by reason of the foregoing, plaintiff has been placed in fear of his life, emotional

damages, distress, pain, suffering, loss of self esteem, self doubt and exposed him to disgrace, public

humiliation and embarrassment was prevented from attending his work and business for a long time,

was deprived of access to his family and was deprived of his constitutional rights and has been

damaged in the sum of Three Million ($3,000,000.00) Dollars.

## AND AS FOR AN ELEVENTH COUNT
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (PENDENT STATE CLAIM)

153.    The Plaintiff repeats, reiterates, and realleges each and every allegation contained in

paragraphs 1 through 152 of this complaint with the same force and effect as though fully set forth

herein.

154.    The COUNTY, VILLAGE, CITY and DEFENDANT OFFICERS acted outrageously for their above-stated roles in the wrongful stop, detainment, false arrest,  prolonged captivity, intimidation and public humiliation of the Plaintiff, JAMES MATTHEW MINTER.

155.    Said emotional harm was exacerbated by the fabricated criminal charges against the Plaintiff, known by COUNTY, VILLAGE, CITY and DEFENDANT OFFICERS to be without basis, yet prosecuted Plaintiff with the intention of causing extreme further harm and duress to the Plaintiff, JAMES MATTHEW MINTER.

156.    In light of the Plaintiff's physical illness, said conduct was even more outrageous, callous, malicious, and dangerous to the emotional well-being of said Plaintiff.

157.    The Defendants knew that their conduct would cause severe and extreme emotional harm to Plaintiff.

158.    That by reason of the foregoing, plaintiff has been placed in fear of his life, emotional damages, distress, pain, suffering, loss of self esteem, self doubt and exposed him to disgrace, public humiliation and embarrassment was prevented from attending his work and business for a long time, was deprived of access to his family and was deprived of his constitutional rights and has been damaged in the sum of Three Million ($3,000,000.00) Dollars.

## AND AS FOR A TWELFTH  COUNT
## NEGLIGENCE (PENDENT STATE CLAIM)

159.    The Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 158 of this complaint with the same force and effect as though fully set forth herein.

160.    Defendants COUNTY, VILLAGE, CITY and DEFENDANT OFFICERS had a duty under 42 U.S.C. §§ 1983, 1985 & 1986, as well as under the Fourth, Fifth, Eighth and Fourteenth Amendments, and under New York State Law and their own rules and regulations, to prevent and cease the wrongful detainment, false arrest, false imprisonment, malicious and false charging and prosecuting, as well as a duty to investigate, supervise and discipline DEFENDANT OFFICERS and prevent other wrongful acts that were committed against Plaintiff JAMES MATTHEW MINTER.

161.    In actively inflicting and failing to prevent the above stated abuses incurred by JAMES MATTHEW MINTER, all of the Defendants acted unreasonably, recklessly, and negligently in failing to exercise the slightest amount of due care to secure and protect the civil and constitutional rights of the Plaintiff against illegal search and seizure, detained custody and arrest without Miranda warnings, and other due process violations.  Said rights are guaranteed to the Plaintiff by 42 U.S.C. §§ 's 1983, 1985, and by the Fourth, Fifth and Fourteenth Amendments of the Constitution.

162.    The breach of duty under 42 U.S.C. § 1986 by Defendants COUNTY, VILLAGE, CITY and DEFENDANT OFFICERS was a direct and proximate cause of the harm suffered by Plaintiff JAMES MATTHEW MINTER.  Said harm includes physical harm, pain and suffering which continues to this day, monetary expenses in lost wages and legal costs, personal humiliation, damage to reputation and loss of standing in the community, and severe physical, emotional and psychological damage, resulting in the need to seek professional counseling for the trauma which he incurred.

163.    That by reason of the foregoing, plaintiff has been placed in fear of his life, emotional damages, distress, pain, suffering, loss of self esteem, self doubt and exposed him to disgrace, public humiliation and embarrassment was prevented from attending his work and business for a long time, was deprived of access to his family and was deprived of his constitutional rights and has been damaged in the sum of Three Million ($3,000,000.00) Dollars.

WHEREFORE, the plaintiff demands judgement against the defendants:

a)    On the First Cause of Action in the sum of Three Million ($3,000,000.00) Dollars;

b)    On the Second Cause of Action in the sum of Three Million ($3,000,000.00) Dollars;

c)    On the Third Cause of Action in the sum of Three Million ($3,000,000.00) Dollars;

d)    On the Fourth Cause of Action in the sum of Three Million ($3,000,000.00) Dollars;

e)    On the Fifth Cause of Action in the sum of Three Million ($3,000,000.00) Dollars;

f)    On the Sixth Cause of Action in the sum of Three Million ($3,000,000.00) Dollars;

g)    On the Seventh Cause of Action in the sum of Three Million ($3,000,000.00) Dollars;

h)    On the Eighth Cause of Action in the sum of Three Million ($3,000,000.00) Dollars;

i)    On the Ninth Cause of Action in the sum of Three Million ($3,000,000.00) Dollars;

j)    On the Tenth Cause of Action in the sum of Three Million ($3,000,000.00) Dollars;

k)    On the Eleventh Cause of Action in the sum of Three Million ($3,000,000.00) Dollars;

l)    On the Twelfth Cause of Action in the sum of Three Million ($3,000,000.00) Dollars;

m)    Punitive damages in the sum of TEN MILLION DOLLARS ($10,000,000.00);

n)    Declaratory Judgment that defendants wilfully violated plaintiffs' rights secured by federal and state law as alleged herein;

o)    Injunctive relief, requiring defendants to correct all past violations of federal and state law as alleged herein; to enjoin defendants from continuing to violate federal and state law as alleged herein; and to order such other injunctive relief as may be appropriate to prevent any future violations of said federal and state laws;

p)    Award such other and further relief as this Court may deem appropriate, including costs and attorney's fees.

## A JURY TRIAL IS HEREBY DEMANDED.

Dated: Hempstead, New York
       May 21, 2009

LAW OFFICES OF
FREDERICK K. BREWINGTON
By: _____
FREDERICK K. BREWINGTON (FB-5295)
*Attorneys for Plaintiff*
50 Clinton Street, Suite 501
Hempstead, New York  11550
Tel: (516) 489-6959